512-001

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | Case No.: 14-01948 (EAG) |
| RAMALLO BROS. PRINTING, INC. | Chapter: 11 |
| Debtor. | |

**MOTION REQUESTING ENTRY OF ORDER FOR DEBTOR TO IMMEDIATELY SURRENDER POSSESSION AND VACATE LEASED PREMISES, FOR ADEQUATE PROTECTION AND REQUEST FOR EXPEDITED HEARING**

TO THE HONORABLE BANKRUPTCY COURT:

COMES NOW, by counsel, the Municipality of San Juan (hereafter the "Municipality"), and very respectfully represents and prays as follows:

### I.     PROCEDURAL BACKGROUND AND INTRODUCTION.

1. On March 14, 2013 (the "Petition Date"), Ramallo Bros. Printing, Inc. (the "Debtor") filed the instant Chapter 11 petition (Docket No. 1).

2. As reflected in Debtor's schedules, the Debtor leases from the Municipality a commercial property from which it operates its business pursuant to a Lease Agreement executed on December 15, 2010 (the "Lease Agreement"). *See* Docket No. 1, p. 30, Schedule G (Executory Contracts and Unexpired Leases).[1]

3. The Municipality has filed Claim No. 20, which stems from Debtor's pre-petition outstanding obligations under the Lease Agreement.

4. Under the Lease Agreement, the Debtor leases a space of 245,904 square feet (the "Leased Premises") in an industrial building with a total leasable area of 359,851

---

[1] A true, accurate and complete copy of the Lease Agreement is included as **Exhibit A** of Docket No. 57.

square feet, located at Quebrada Arenas Ward, Rio Piedras, Puerto Rico (the "Property"). See **Exhibit A** of Docket No. 57, p. 16, Article 9.1.

5. The Lease Agreement also requires the Debtor to pay its share of the electrical energy costs of operating its business on the Leased Premises. *Id.*[2]

6. On May 31, 2014, the Debtor filed a motion to reject the Lease Agreement and to request an extension of time to reach an agreement with the Municipality for the continuous use of the Leased Premises (Docket No. 91).

7. The Municipality hereby informs that it has rejected the proposal submitted by the Debtor and does not agree to Debtor's continued use of the Leased Premises.

8. Accordingly, the Municipality requests this Honorable Court to order the Debtor to immediately surrender possession and to vacate the Leased Premises pursuant to 11 U.S.C. § 363(d)(4)(A).

9. In addition, the Municipality requests adequate protection in the form of an order providing for an immediate payment or deposit for rent and utilities for Debtor's continued use and occupancy of the Leased Premises (*i.e.*, from the date on which the Court approves the rejection of the Lease Agreement through the date on which the Debtor has vacated the Leased Premises).

10. In order to adequately protect the Municipality's interest as landlord, the Municipality hereby requests the Court to schedule a hearing to consider this matter as soon as the Court's calendar permits, inasmuch as Debtor's continued use of the Leased Premises on a rent/utilities-free basis **is occurring at a public expense**.

---

[2] Article 11.6 of the Lease Agreement, at pages 22-23, provides as follows:

> The Municipality and/or the Landlord shall provide and assume the cost of all basic utilities including but without limitation, the access for the services of water, electricity, gas… Notwithstanding, the Parties agree that Ramallo and/or the Lessee shall reimburse the Municipality and/or the Landlord on a monthly basis for the consumption of said utilities." (Translation ours).

## II. DISCUSSION.

A. **Effect of Rejection of Lease Agreement.**

11. Section 365(d)(4)(A) of the Bankruptcy Code provides as follows:

> Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee **shall immediately surrender that nonresidential real property to the lessor**, if the trustee does not assume or reject that unexpired lease by the earlier of:
> (i) the date that is 120 days after the date of the order for relief; or
> (ii) the date of the entry of an order confirming a plan.

(Emphasis added).

12. The Lease Agreement is an unexpired lease of nonresidential real property. Under said contract, the Debtor leases space at an industrial building for the purpose of operating its printing business.

13. The Municipality seeks relief under said provision insofar as its rights as a landlord are not adequately protected. The Debtor has not made a single rent payment since the Petition Date and has not complied with other obligations under the Lease Agreement, such as the payment for its post-petition consumption of electrical power.

14. Section 365(d) is intended "to protect lessors from the risk caused by the precarious financial condition of lessee debtors and provide a short time frame for a Debtor-in-Possession to elect either to assume and unexpired non-residential lease or vacate the premises forthwith". *In re Deli Den, LLC*, 425 B.R. 725, 727 (Bankr. S.D. Fla. 2010) (*quoting In re Golden Triangle Films Labs*, 176 B.R. 608, 609-10 (Bankr. M.D. Fla. 1994).

15. As of this date, the Debtor has moved to reject the Lease Agreement, alleging that it is onerous and burdensome to the estate. *See* Docket No. 91, pp. 1-2, ¶ 5. However,

the Debtor continues to use and occupy the Leased Premises and appears to have no intention of vacating in the short-term.

16. Generally, under 11 U.S.C. § 363(g), the rejection of an unexpired lease constitutes a breach of such lease. As a sister bankruptcy court has stated, the rejection of a lease "is a court-authorized breach" of said lease. *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 51 (Bankr. E.D.N.Y. 2004) (*citing Medical Malpractice Insurance Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 386 (2nd Cir. 1997)).

17. Simply stated, "[r]ejection …means that the bankruptcy estate itself will not become a party to [the lease]." Michael T. Andrew, Executory Contracts in Bankruptcy; Understanding "Rejection", 59 U. Colo. L. Rev. 845, 848 (1988).

18. Therefore, upon rejection of an unexpired lease of nonresidential real property, the debtor in possession abandons its right to enjoy the occupancy under the lease. *In re NETtel Corp.*, 289 B.R. 486, 489 (Bank. D.C. 2002).

19. As specifically stated by a sister bankruptcy court:

> … looking to the postrejection period, the Bankruptcy Code works this way: rejection ends the trustee's further entitlement to enjoy the right of occupancy under the lease in the period after rejection, and in exchange the estate is relieved of the liability for such future right of occupancy as an administrative claim. As long as the estate has ceased occupancy of the property by the date of rejection, the estate is saddled with liability for the postrejection period only as a prepetition claim (entitling the landlord in a chapter 7 case to share pro rata, under 11 U.S.C. § 726(a), with holders of other general unsecured claims in whatever is left after payment of administrative and other priority claims).
>
> *In re NETtel Corp* 289 B.R. at 491-92; *see also In re Ames Dep't Stores, Inc.*, 306 B.R. at 51.

20. By the same token, the rejection of an unexpired lease entitles the lessor to regain the immediate possession of the leased property. *In re Deli Den, LLC*, 425 B.R. 725, 727

(Bankr. S.D. Fla. 2010) (*quoting In re Chris-Kay Foods East, Inc*., 118 B.R. 70, 72 (Bankr. E.D. Mich. 1990).

21. In this case, the Debtor has moved to reject the Lease Agreement prior to the expiration of the 120-day term. Thus, it has voluntarily relinquished its further entitlement to the continued use and enjoyment of the Leased Premises.[3]

22. The consequences for a debtor that rejects an unexpired lease of nonresidential real property are clear: it must deliver possession of the leased premises immediately. Here, the Debtor has voluntarily assumed such consequences and must proceed accordingly.

23. To this end, the majority of courts have held that in order to implement the clear mandate of 11 U.S.C. §365(d)(4)(A), bankruptcy courts have the authority to order the debtor to vacate the premises. *In re Elm Inn, Inc.*, 942 F.2d 630 (9th Cir. 1991); *In re Deli Den, LLC*, 425 B.R. 725, 727 (Bankr. S.D. Fla. 2010); *In re Sok Jun Kong*, 162 B.R. 86, 95 (E.D.N.Y. 1993); In re U.S. Fax, Inc., 114 B.R. 70, 73 (E.D. Pa. 1990); *In re Chris-Kay Foods East, Inc*., 118 B.R. 70, 72 (Bankr. E.D. Mich. 1990);

24. These courts have granted surrender orders on the basis that "the plain language and purpose of section 365(d)(4), the necessarily preemptive force in Bankruptcy Code, and the broad equitable powers of bankruptcy judges all weigh in favor of granting a surrender order to a lessor who, under the terms of the provision, clearly deserves one."

25. Although multiple courts have granted a grace period for the debtor to vacate the premises after a lease has been rejected, such period has not exceeded 30 days. *See*,

---

[3] Albeit 11 U.S.C § 363(d)((4)(A) is technically inapposite when, as here, the debtor has moved to reject the Lease Agreement prior to the expiration of the 120-day term—courts have viewed it as a recognition that the estate ceases to have a right under the lease to enjoy occupancy once the lease is rejected. *See, e.g*., *In re NETtel Corp*., 289 B.R. at 489 n.6.

*e.g.*, *In re Deli Den, LLC*, 425 B.R. at 727 (4 days to surrender leasehold and vacate premises); *In re Damianopoulos*, 93 B.R. 3 (N.D.N.Y 1988) (30 days to vacate premises that debtor rented to operate a restaurant); *In re O.P. Held, Inc.*, 77 B.R. 388 (N.D.N.Y. 1987) (10 days from entry of order to vacate premises that served as debtor's headquarters and manufacturing facility); *In re Hurst Lincoln-Mercury, Inc.*, 70 B.R. 815 (S.D. Ohio 1987) (two weeks to vacate premises); *In re Morningstar Enterprises, Inc.*, 128 B.R. 102, 107 (Bankr. E.D. Pa. 1991) (ordering forbearance of physical eviction for 25 days).

26. In light of the above, the Municipality hereby requests the Court to order the Debtor to surrender possession and vacate the premises *post haste*; that is, in a period not to exceed twenty (20) days.

27. The Debtor has paid nothing since the inception of this case and has not otherwise provided adequate protection to its landlord, notwithstanding that the operating report for the month of April 2014 reflects an ending cash balance in excess of $500,000.00. *See* Docket No. 80. In addition, Debtor continues to operate utilizing electrical power that it has no intention of paying.

**B. Debtor's post-petition post-rejection obligations.**

28. Under 11 U.S.C. § 365(d)(5), the Debtor is required to pay rent and utilities until the time the lease is actually rejected. *Giant Eagle, Inc. v. Phar-Mor, Inc.*, 528 F.3d 455, 466 (6th Cir. 2008).

29. According to the First Circuit, a rejection of a lease under Section 365(a) is not effective until judicial approval is secured. *Thinking Machs. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1025 (1st Cir. 1995).

30. As mentioned above, the Debtor has not made a single payment to the Municipality for rent or utilities since the Petition Date. As a matter of fact, the Debtor has not paid rent since April of 2012 and has not paid utilities since June of 2013. The Municipality will eventually file a claim for such administrative expenses, which the Debtor was required to **pay on a timely basis** as set forth in 11 U.S.C. § 363(d)(3).[4]

31. Throughout this period, the Debtor has benefited from the use and occupancy of the Leased Premises. Such use has allowed the Debtor to continue its business operations, generate income and preserve its going concern value. Meanwhile, other suppliers are receiving payment in the ordinary course and the largest secured creditor has been receiving an adequate protection payment.

32. Debtor's post-petition post-rejection obligation for its continued use and occupancy of the Leased Premises (and its share of the electricity costs), is determined "under an objective worth standard that measures the fair and reasonable value…" *In re Thompson*, 788 F.2d 560, 563 (9th Cir. 1986).

33. This means that the fair and reasonable value of the lease upon the open market controls. *Id*. To determine fair value, the court may, in its discretion, require the testimony of an expert witness. *Id*.

34. However, to this end, the rent established in the lease agreement is presumptive evidence of the fair and reasonable value of the use and occupancy of the leased premises. *Id*. *Accord In re Jeans.com*, 491 B.R. 16, 24 (Bankr. D.P.R. 2013).

---

[4] As to debtor's obligations under § 363(d)(3), multiple courts have allowed as an administrative expense the rent and other monetary obligations at the rate established in the contract, prorated over the post-petition pre-rejection period. *See In re All for a Dollar*, 174 B.R. 358, 360 (Bankr. D. Mass 1994) (collecting cases). *See also* Collier on Bankruptcy, ¶ 365.05[3][c] (16th ed.).

35. Here, the monthly rent payment due from the Debtor to the Municipality under the Lease Agreement is **$200,411.76** ($9.78/sq. feet), as of December 15, 2013. *See* **Exhibit A** of Docket No. 57, p. 16, Section 9.1.

36. Thus, the Debtor must pay on a post-rejection basis the rent for the used and occupied space at the rate of $9.78/sq. feet, unless and until it can show that the reasonable value for such use and occupancy differs from that rate. *In re Thompson*, 788 F.2d at 563. The burden rests upon the Debtor.

37. Debtor must also reimburse the Municipality for its consumption of the electrical power, as the Debtor is benefiting from the use of electricity without paying for it. The electrical power that the Debtor has been using post-petition and will continue to use post-lease rejection, is sourced through the only meter established for the entire building, which is currently under the Municipality's name.

38. The Municipality estimates Debtor's electricity consumption to be at least 70% of the total consumption of the Property, based on Debtor's occupancy rate of 66.33% of all leasable area, the heavy machinery operated by the Debtor and the fact that the remaining premises have always been unoccupied.

39. The electricity expense is substantial in this case. Based on the 70% estimated consumption, the Debtor should be reimbursing the Municipality approximately $175,000.00 per month. That is, for the first quarter of the current year, the amount due for the electrical power for the entire building averaged about $250,000.00. *See* **Exhibit** 3, of Claim No. 20.

40. The Municipality's administrative claim continues to grow at a substantial rate (specifically, at a rate of $375,000 per month). Thus, Debtor's continued use and occupancy of the Leased Premises on a rent/utilities accrual basis, is not only

prejudicial to the Municipality and its use of public funds, but also to the body of unsecured creditors. The Municipality has had to identify other public funds to comply with the bond obligations that were serviced and guaranteed with this rental income.

41. The payment of rent and utilities is a basic, necessary recurring expense of Debtor's business operations and, as such, an integral component of Debtor's attempt to achieve a successful reorganization. The fact that the Debtor has not paid these basic expenses on a recurrent basis is a sign of an administratively insolvent debtor with no likelihood of rehabilitation in a reasonable period of time.

### III. CONCLUSION.

42. The Debtor's decision to reject the Lease Agreement comes at a price. As the Municipality has rejected Debtor's proposal for an extended use and occupancy of the Leased Premises, the debtor must deliver possession and vacate the premises forthwith. The Debtor should be granted a term of not more than twenty (20) days to vacate the premises and move its operations to another location.

43. In the meantime and until the Debtor has vacated the premises, the Debtor must pay the Municipality for its continued use and occupancy of the Leased Premises. The fair value of such use and occupancy must be set at the contractual rate, unless the Debtor rebuts the presumption that said value is fair and reasonable.

44. Given Debtor's track record of non-payment, the Court should order the **immediate payment or deposit of $200,000.00** (*i.e.*, approximately 50% of Debtor's current monthly obligations for rent and utilities under the Lease Agreement), as adequate assurance of future payment of the related obligations.

512-001

45. Again, it appears from Debtor's operating report for the month of April 2014, that the Debtor has available funds to make this immediate payment. *See* Docket No. 80.

**WHEREFORE**, the Municipality of San Juan respectfully requests this Honorable Court: (i) to order the Debtor to immediately surrender possession of the Leased Premises to the Municipality and to vacate the Leased Premises forthwith, in a period not to exceed twenty (20) days; (ii) to order the Debtor to immediately tender to the Municipality an immediate payment or deposit of $200,000.00 (*i.e.*, approximately 50% of Debtor's current monthly obligations for rent and utilities under the Lease Agreement), as adequate assurance of future payment of the related obligations; (iii) to schedule a hearing to consider this matter, as soon as the Court's calendar permits, given that Debtor's continued use of the Leased Premises and the electrical power is occurring at a public expense; and (iv) to grant any other relief in favor of the Municipality as is just and proper in light of the above referenced circumstances.

**CERTIFICATE OF SERVICE**: We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF systems which will send notification of such filing to debtor's counsel of record, the Office of the United States Trustee, and all CM/ECF participants.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 6th day of June 2014.

**O'NEILL & GILMORE, P.S.C.**
*Attorneys for the Municipality of San Juan*
City Towers, Suite 1701
252 Ponce de León Avenue
San Juan PR  00918-2019
Tel. (787) 620-0670
Fax (787) 620-0671

512-001

*s/ Patric D. O'Neill*
USDC-PR No. 128202
E-mail: pdo@go-law.com

*s/Charles P. Gilmore*
USDC No. 209614
E-mail: cpg@go-law.com

*s/Lucas A. Córdova-Ayuso*
USDC-PR No. 226805
E-mail: lcordova@go-law.com