**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 14-01948 EAG |
| RAMALLO BROS. PRINTING INC. | CHAPTER 11 |
| DEBTOR. | FILED & ENTERED ON 06/22/2015 |

**OPINION AND ORDER**

Pending before the court are debtor's motion to voluntarily dismiss the case and the Municipality of San Juan's response thereto seeking to either convert the case to chapter 7 or condition dismissal on the payment of administrative expenses.  (Docket Nos. 312 & 319.)  For the reasons stated below, the court grants the debtor's motion to voluntarily dismiss the case and denies the Municipality's request.

**I.      Introduction.**

On March 30, 2015, debtor Ramallo Bros. Printing Inc. filed a motion to dismiss this case under section 305(a), asserting that it was unable to present a feasible chapter 11 reorganization plan since it had failed to reach an agreement with the Municipality, one of its major creditors.[1]  (Docket No. 312.)  On April 24, 2015, the Municipality filed its response to the debtor's dismissal request, arguing that the case should either be converted to chapter 7 under section 1112(b), or, alternatively, to condition dismissal on the

---

[1]Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico.  And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

immediate payment of unpaid administrative expenses if the court found dismissal to be in the best interests of creditors and the estate. (Docket No. 319.) Prior to the hearing, creditors American Paper Corp., Sachs Chemical, Inc., Tropigas de Puerto Rico, and United Surety & Indemnity Company all filed motions in support of debtor's voluntary dismissal. (Docket Nos. 345, 348, 350 & 352.) LSREF2 Island Holdings Ltd. ("Island Holdings") appeared at the hearing stating that it was in favor of dismissal, as will be explained in more detail below. In addition, the United States of America, on behalf of the Environmental Protection Agency ("EPA"), filed a motion and appeared telephonically at the hearing, indicating that it took no position as to whether the case should be dismissed or converted. (Docket No. 332.) The EPA did, however, have a limited objection to the Municipality's request for a conditional dismissal to the extent such a dismissal did not seek to treat all administrative priority claims equally. Id.

An evidentiary hearing was held on the matter on June 5, 2015, at which the court heard testimony from Aida Escribano Ramallo, the debtor's in-house CPA, Alberto Ramallo Yllanes, the debtor's president, and Manuel Cruz Soto, the executive officer of the Municipality for the Department of Economic Development. One exhibit was entered into evidence, during the testimony of Ms. Escribano. See Exhibit A. After hearing the witnesses' testimony and the attorneys' arguments, the court took the matter under advisement. The parties were ordered to file supplementary briefs consisting of a statement of proposed findings of fact, with documentary and/or testimonial references, as to whether it was in the best interest of creditors and the estate for the case to be voluntarily dismissed or whether it should be converted to chapter 7.

2

## II.     Legal Analysis.

In this case, the debtor is seeking to voluntarily dismiss the bankruptcy case under section 305(a).  (Docket No. 312.)  Among other things, section 305(a) permits a court to dismiss a case if both the debtor and the creditor would be better served by such a dismissal.  11 U.S.C. § 305(a)(1).  See In re Monitor Single Lift I, Ltd., 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008) ("Granting an abstention motion pursuant to §305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief.").  Courts considering such a motion take into account several factors, including: "(i) the purpose of the bankruptcy; (ii) the availability of a more appropriate forum to decide the unsettled issues; (iii) efficiency and economy of administration; and (iv) the interests of the creditors and debtor."  In re Costa Bonita Beach Resort, 479 B.R. 14, 46 (Bankr. D.P.R. 2012).

The Municipality, on the other hand, seeks to convert or dismiss the case pursuant to section 1112(b).  This provision allows a court to convert or dismiss a case, whichever is in the best interests of creditors and the estate, for "cause."  11 U.S.C. § 1112(b).  While the phrase "best interest of the creditors and the estate" is not defined in the Bankruptcy Code, courts have taken the following factors into consideration in determining whether to dismiss or convert a chapter 11 case:

> (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted, (3) whether the debtor would simply file a further case upon dismissal, (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, (6) whether any remaining

3

issues would be better resolved outside the bankruptcy forum, (7) whether the estate consists of a "single asset," (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests, (9) whether a plan has been confirmed and whether any property remains in the estate to be administered, and (10), whether the appointment of a trustee is desirable to supervise the estate and address possible environment and safety concerns.

In re Costa Bonita Beach Resort, 513 B.R. 184, 200-01 (Bankr. D.P.R. 2014) (quoting Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[7] (16th ed. 2011)). While the parties rely on different sections of the Code to support their requested relief, in this particular case the analysis essentially boils down to whether it is in the best interest of creditors and the estate for the case to be dismissed or whether it would be better to convert the case to chapter 7. This is because the debtor has already conceded that it cannot remain in chapter 11 and would have to convert to chapter 7 if its motion were denied. Bearing this in mind, the parties' focus on the hearing and in their papers was on establishing whether the debtor and creditors were better served by dismissal or conversion. Indeed, the Municipality's request for conversion does not specify a particular "cause" under section 1112(b) for conversion or dismissal, instead focusing on which option was in the best interests of creditors and the estate.[2] (Docket No. 319.)

In its motion, the debtor argued that dismissal was warranted because it was in the best interest of creditors and the estate to allow the debtor to exit bankruptcy in order to give it time to either obtain sufficient financing to allow the business to continue or to

---

[2] The Municipality's opposition does make reference to the fact that debtor had fallen behind in filing the monthly operating reports. (Docket No. 319 at p. 5.) However, this failure is cited as evidence that the debtor has not supplied sufficient information to its creditors to determine whether dismissal or conversion was in their best interests rather than as an independent basis to dismiss or convert the case under section 1112(b). Id.

"maximize the return of its asset through an orderly liquidation outside of bankruptcy."

(Docket No. 312 at p. 2.) The debtor maintains that its two main assets, the printing machinery and equipment, would quickly lose substantial value if not in regular use, which weighs against converting the case to chapter 7. Id. The Municipality, on the other hand, argued that a conditioned dismissal or conversion to chapter 7 was warranted because the debtor had not disclosed sufficient information about what its proposed liquidation outside of bankruptcy would entail or about a potential agreement the debtor was finalizing with its main secured creditor, Island Holdings. (Docket No. 319 at pp. 4-5.) Furthermore, the Municipality argued that a chapter 7 trustee would be able to pursue avoidance actions against the debtor for various alleged payments to insiders and preferential treatment given to related entities. Id. The Municipality also accused the debtor of misusing funds subject to the court's cash collateral order by ceasing to make post-petition rent and utility payments after January 2015. Id.

At the beginning of the hearing, the debtor informed the court that it had reached a settlement agreement with Island Holdings, which had filed a secured claim in the case in the amount of $11,411,672.44. (Claims Register No. 16-1.) The agreement provided for a settlement payment to the secured creditor in the amount of $5,558,000.00, representing a discount of nearly $6 million that the debtor would not obtain if the case was converted to chapter 7. A joint motion further describing the agreement was filed during the course of the hearing. (Docket No. 357.)

During the testimony of Ms. Escribano, a chart she prepared was entered into evidence comparing liquidation and dismissal scenarios. See Exhibit A. Ms. Escribano

stressed that this chart was intended to represent the "worst case scenario" in which the debtor was unable to obtain sufficient financing to continue operations. She estimated that a liquidation outside of bankruptcy could take up to two years. According to the chart, an orderly liquidation conducted outside of bankruptcy is projected to result in a payout to general unsecured creditors of $608,202.00, while a liquidation by a chapter 7 trustee would result in no payout to unsecured creditors. See Exhibit A. Ms. Escribano testified as to her methodology, first explaining that she heavily discounted the projected recovery of the accounts receivable given the age of some of those accounts, which in some cases extended back 20 years or more. Ms. Escribano then demonstrated why the sale of the inventory, property and equipment would result in a much higher amount in a dismissal scenario versus liquidation by the chapter 7 trustee. In particular, Ms. Escribano explained why she heavily discounted the inventory under the liquidation scenario because the company's main raw material, paper, is extremely sensitive to humidity. She stated that by the time a chapter 7 trustee could hold a sale, the majority of the paper would be worthless. The court finds this point persuasive, especially given that the trustee would likely not be able to keep the debtor in business long enough to complete any sale, since the debtor only had approximately $9,500.00 on hand as of March 2015.

Ms. Escribano's testimony is also supported by that of debtor's president, Mr. Ramallo. Specifically, Mr. Ramallo testified in detail about how quickly rust could develop if the printing machines were not properly maintained and in continuous operation, and thus how quickly the machines would lose value if not sold while still in operation. Mr. Ramallo's also explained that the market for printing equipment is quite specialized and

that it would be difficult for a chapter 7 trustee to effectively market and sell the inventory and equipment quickly for a good price. Toward that end, Mr. Ramallo explained in the context of moving the debtor's operations to another location, that it would take the debtor 8 weeks to disassemble one line of the printing equipment and another 6 weeks to re-assemble it. The court finds the testimony of Ms. Escribano and Mr. Ramallo to be credible.

That being said, the Municipality did establish during cross-examination that Ms. Escribano's forecast was far from certain. Also, there appears to be a discrepancy between the amount of the discounted payoff included in the chart compared to the motion. In the chart, the settlement payment is stated to be $5,150,000.00, whereas the joint motion lists it as $5,558,000.00. See Exhibit A; (Docket No. 357.) If the amount included in the joint motion is accurate, this would reduce the amount left over for general unsecured creditors in the dismissal scenario to $200,202. The debtor has clarified in a subsequent motion, however, that the $5,150,000 is the amount that debtor must pay the secured lender by the end of the liquidation process, which debtor estimated as taking two years. (Docket No. 365.) Notwithstanding, the court finds that the testimony of debtor's in-house accountant and president, together with the submission of the joint motion informing the court of the agreement reached between the debtor and Island Holdings, sufficiently addressed the Municipality's concerns regarding a lack of disclosure about the debtor's proposed liquidation outside of bankruptcy and of the agreement debtor had reached with its mortgage creditor.

Turning to the Municipality's other arguments in favor of conversion, the Municipality did not strongly pursue at the hearing its contention that a chapter 7 trustee

would bring preference actions to avoid certain of the debtor's transactions with insiders. The only relevant testimony came from the debtor's president, who testified that he had received a partial repayment during the year preceding the filing of the petition of a loan he had made to the debtor, although he could not recall the amount he had received. Thus, while the Municipality alleges that several payments made by the debtor to one of its affiliates, Caribbean Printing Group, Inc., qualify as preferences, the Municipality has not put the court in a position to determine how likely a chapter 7 trustee would be to recover any benefit for the estate under section 547(b) or any of the other trustee's avoidance powers.

Finally, the court finds that the Municipality did not establish at the hearing that the debtor misused funds subject to the court's cash collateral order by ceasing to make post-petition rent and utility payments after January 2015. Instead, the witnesses' testimony reveals that there is a genuine dispute between the parties as to the amount of rent owed, taking into account any credit owed to the debtor for expenses it paid to maintain the common areas and for electricity consumption. Nevertheless, both the debtor and the Municipality agree that this dispute, which basically concerns alleged breaches of the lease agreement by both parties, can be resolved through litigation in local court.

Based on the foregoing, the court finds that it is in the best interests of creditors and the estate to dismiss the bankruptcy case. Even assuming that the Municipality established that there was a "cause" to dismiss or convert the case under section 1112(b), the Municipality did not show how creditors would benefit from the conversion of the case to chapter 7. Indeed, the court fails to see how conversion would even be to the benefit of the

Municipality, given the value of Island Holdings' secured claim and the fact that conversion would probably not lead to the debtor being evicted from the property any sooner. Instead, considering the amount of Island Holdings' secured claim, it is likely that a chapter 7 trustee would simply abandon all of the debtor's assets, which again would leave the Municipality and the other creditors to pursue their claims against the debtor in local court. Furthermore, if the case was converted, it would result in an administratively insolvent chapter 7 case both because there is only $9,500.00 on hand as of March 2015, and because of the high rent and utility expenses which would continue even if the trustee were to shut down the operation.

### III.    Conclusion.

In light of the above, the court grants the debtor's motion to voluntarily dismiss the case at docket number 312 and denies the Municipality's request at docket number 319 to convert the case to chapter 7 or to condition dismissal on the payment of unpaid administrative expenses.

SO ORDERED.

In Ponce, Puerto Rico, this 22nd day of June, 2015.

Edward A. Godoy

U.S. Bankruptcy Judge

9